## UNITED STATES DISTRICT COURT

_____ DISTRICT OF MASSACHUSETTS _____

UNITED STATES OF AMERICA

V.

JEFFREY HOLLIDAY

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER: M.J. No. 04-867-pub13

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From in or about September 8, 1998, through on or about January 25, 2002, in __Middlesex__ county, in the District of __Massachusetts, and elsewhere__ defendant knowingly and willfully embezzled, stole, purloined, and converted to his own use, and the use of others, money and things of value of the United States having a value exceeding $1,000,

in violation of Title _____18_____ United States Code, Section _641_____.

I further state that I am a(n) __Special Agent of the Office of the Inspector General, U.S. Department of Justice__
                          Official Title

and that this complaint is based upon the following facts:

See Affidavit attached hereto and incorporated by reference herein.

Continued on the attached sheet and made a part hereof:    [x] Yes    [ ] No

_____
Signature of Complainant
THOMAS M. HOPKINS
Special Agent - DOJ/OIG

Sworn to before me and subscribed in my presence,

__July 20, 2004 @ 11:20 AM__    at    __Boston, Massachusetts__
Date                                        City and State

MARIANNE B. BOWLER
__Chief U.S. Magistrate Judge__
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

## Affidavit of Special Agent Thomas M. Hopkins

1.    I, Thomas M. Hopkins, am a Special Agent with the United States Department of Justice, Office of the Inspector General ("DOJ/OIG").  The DOJ/OIG is responsible for investigating waste, fraud, abuse, and corruption involving employees of the DOJ.

2.    I have been a federal law enforcement officer for approximately 18 years and have served with the Department of State, Bureau of Diplomatic Security and the Internal Revenue Service, Inspection Division.  During the course of my law enforcement career, I have been involved in numerous investigations involving the fraudulent use of credit cards, including government credit cards.

3.    I submit this affidavit in support of a criminal complaint charging that from on or about September 8, 1998, to on or about January 25, 2002, JEFFREY HOLLIDAY ("HOLLIDAY") did knowingly and willfully embezzle, steal, purloin, and convert to his own use, and the use of others, money and things of value of the United States having a value exceeding $1,000, in violation of Title 18, United States Code, Section 641.

4.    This affidavit is based upon my own personal observations and participation in this investigation, my conversations with other law enforcement officers who have participated in this investigation, interviews with witnesses,

and reviews of reports, documents, and other evidence obtained during the investigation. It does not contain every detail of this investigation; rather, it contains those facts that I believe are necessary and sufficient to establish probable cause to believe that HOLLIDAY violated Title 18, United States Code, Section 641.

### Overview of the Investigation

5. The Federal Bureau of Prisons ("BOP") is a component of the Department of Justice. The BOP operates a Federal Medical Center ("FMC") at Fort Devens, Massachusetts ("FMC Devens"). Since approximately May of 2003, I have participated in an investigation of possible fraudulent activity at FMC Devens.

6. Based upon that investigation, I have learned that HOLLIDAY devised and executed a fraudulent scheme to obtain money for his personal use by having businesses charge government credit cards for nonexistent transactions. The businesses would then write checks to third parties for an amount that was close to the total amount charged on the credit card and send the checks to HOLLIDAY. After receiving the checks, HOLLIDAY would arrange to obtain the funds for his personal use.

### Review of Records and Interview of FMC Devens Staff

7. On or about Wednesday, May 28, 2003, I spoke with FMC Devens Warden David Winn and FMC Devens Budget and Accounting

Officer Monica Gagnon. Winn and Gagnon stated that HOLLIDAY is an employee at FMC Devens who had been issued a government procurement credit card and had been given purchase and procurement authority relating to the operation of FMC Devens. I learned that, according to a query of FMC Devens procurement records conducted by Gagnon, Holliday made several purchases from a California-based vendor, identified as Marine Sheet Metal, Inc. I learned that HOLLIDAY formerly was employed at a nearby BOP facility at Terminal Island, California. Gagnon provided a list of transactions relating to purchases made from Marine Sheet Metal charged against a government procurement credit card issued to Holliday. In reviewing the list I observed that it reported eight purchases, totaling $19,238 from a period starting September 8, 1998, through February 20, 2001.

8.    On or about Wednesday, May 28, 2003, I spoke with FMC Devens Controller Matthew Langford. Langford reported that he had conducted a search of FMC Devens credit card procurement records and compared it against the list of purchased items from Marine Sheet Metal prepared by Monica Gagnon. Langford reported that his search revealed no record of receipt of any of the items identified on that list. Langford explained that FMC Devens credit card procurement records typically contain documentation indicating receipt of the items for which the charges had been

3

incurred.    Langford reported that his search revealed no record of receipt for any of the items which Gagnon had identified as having been purchased by HOLLIDAY via a government procurement credit card from Marine Sheet Metal, Inc.

9.    On or about Friday, July 18, 2003, I reviewed 27 FMC Devens government procurement credit card account statements provided by FMC Devens Warden David Winn.    I observed that the statements pertained to purchases made by HOLLIDAY via government procurement credit cards.    Among the documents, I observed charges corresponding to transactions previously identified by FMC Devens Budget and Accounting Officer Monica Gagnon regarding purchases made by HOLLIDAY from Marine Sheet Metal, Inc.

**Information Obtained from Marine Sheet Metal, Inc.**

10.    On or about Monday, October 6, 2003, another Special Agent from the DOJ/OIG interviewed Stephen Amundson, who identified himself as the owner of Marine Sheet Metal in Terminal Island, California since 1995.    Amundson advised that he knew HOLLIDAY and that the two of them first met in approximately 1994 while HOLLIDAY was employed at the BOP facility at Terminal Island.    Amundson indicated that he did business with FMC Devens and that HOLLIDAY purchased items from Marine Sheet Metal using a government credit card.

11.    Amundson further stated that he participated in a plan

4

of HOLLIDAY's whereby Amundson wrote checks to a vendor located near FMC Devens for goods delivered by the vendor to FMC Devens. Amundson explained that HOLLIDAY claimed that he was dealing with a vendor who was unable to accept credit card payments. Amundson said that HOLLIDAY requested that Amundson accept charges against HOLLIDAY's FMC Devens procurement credit card for goods to be delivered to the BOP by the vendor, and then provide a check for the vendor in payment for the goods. Amundson said that he agreed to do so and that HOLLIDAY thereafter made charges with his government procurement credit card against Marine Sheet Metal, Inc. Amundson stated that HOLLIDAY would contact him by telephone and provide him with a credit card number. Amundson would then charge that credit card number and then send a check made out in the name of the vendor to HOLLIDAY.

12. I engaged in several subsequent telephone conversations with Amundson in which he reiterated the information that he had provided previously. Amundson said that he wrote up the paperwork regarding the transactions involving the vendor as directed by HOLLIDAY. Amundson said that he kept from two to four percent of the costs of such transactions for himself.

13. I have reviewed documents provided by Amundson. The materials included original Marine Sheet Metal delivery slips, invoices and work orders, and sales drafts, containing credit

5

card numbers and dates of transaction, as well as original cancelled checks drawn from Marine Sheet Metal. A review of the documents revealed that between September 8, 1998, and December 31, 2001, Marine Sheet Metal charged approximately $66,513 to government credit cards. According to Matthew Longford, the Controller at FMC Devens, each of the credit cards that was charged by Marine Sheet Metal was held in the name of HOLLIDAY or an FMC Devens employee who was supervised by HOLLIDAY.

14.    Between November 6, 2000, and January 25, 2002, Marine Sheet Metal issued a series of 16 checks in the names of two individuals. The value of the checks was $59,750. A review of the checks shows that at least 12 of them appear to have been endorsed and then signed over to HOLLIDAY. These 12 checks (valued at $39,780) were then deposited into HOLLIDAY's personal account at Fleet Bank. Several of the remaining checks were cashed at a check cashing establishment in Worcester, Massachusetts.

**Information Related to Digatron, Inc.**

15.    I have reviewed other records showing a similar pattern of activity involving another business, Digatron, Inc., which is located in Denver, Colorado. From on or about March 5, 2001, to on or about September 12, 2001, Digatron, Inc. charged approximately $36,964 to various credit cards issued to employees

6

of FMC Devens. Between March 13, 2001, and September 10, 2001, approximately $27,170 in checks were written by Digatron to the same individual who was the listed payee on the majority of the checks issued by Marine Sheet Metal. Of those checks, at least $19,770 were then deposited into HOLLIDAY's Fleet Bank account. Each of these checks was endorsed to HOLLIDAY.

16.   In a written statement, Anthony Ibarra, the Chief Executive Officer of Digatron, has stated that HOLLIDAY advised that there was a third party subcontractor who was performing work at FMC Devens, but who did not have access to a credit card machine. HOLLIDAY advised that the subcontractor was willing to be paid less than the amount owed to him if Digatron charged a credit card from FMC Devens as a courtesy. Digatron agreed to this arrangment. HOLLIDAY would then call the Digatron accounting department and request that checks be sent to him made out in the name of the subcontractor.

17.   Based upon my review of Digatron records, I have identified a number of examples that are consistent with Ibarra's statement. For example, on May 7, 2001, Digatron issued a check in the name of a third party for $1850. On the following day, Digatron sent a Federal Express package to HOLLIDAY at FMC Devens, which was delivered on May 9, 2001. On the same day, the check was deposited into HOLLIDAY's personal Fleet Bank account.

7

On May 10, 2001, Digatron then charged the credit card of an employee of FMC Devens who was supervised by HOLLIDAY.

## Statements of HOLLIDAY

18.    On or about June 2, 2004, another federal agent and I interviewed HOLLIDAY.  Although HOLLIDAY was not in custody, I advised him of his <u>Miranda</u> rights prior to taking any statement from him.  HOLLIDAY agreed to speak to us about his involvement in fraudulent activity.  He further agreed to prepare and sign a written affidavit in which he admitted to his involvement in fraudulent activity.

19.    In his written statement, HOLLIDAY indicated that he had incurred substantial gambling debts.  In order to obtain cash to pay these debts, HOLLIDAY stated that he "developed a plan to use government credit cards that were under my supervision." HOLLIDAY stated that he told vendors that he was doing business with an entity that could not accept credit card payments.  He asked the vendors to charge the credit cards and issue checks in the name of a third party.  He further stated that the vendors were permitted to keep a small handling fee for participating in the transactions.  Among the vendors HOLLIDAY used were Marine Sheet Metal and Digatron.  HOLLIDAY further stated that he persuaded a third party to cash some of the checks and provide him with the money.  HOLLIDAY stated that on other occasions he

8

signed the checks without the third party's knowledge and deposited them into his Fleet Bank account. HOLLIDAY further admitted that to cover up the charges being made on the government credit cards, he created false invoices and credit card purchase forms on his government computer and placed the false documents in files at FMC Devens.

20. In my review of documents at FMC Devens, I have confirmed that there are a number of false invoices and other documents in the files related to the transactions I have discussed earlier in this affidavit.

21. Based upon all of the foregoing, there is probable cause to believe that HOLLIDAY did knowingly and willfully embezzle, steal, purloin, and convert to his own use, and the use of others, money and things of value of the United States having

a value exceeding $1,000, in violation of Title 18, United States Code, Section 641.

Signed under the pains and penalties of perjury this ____ day of July, 2004.

THOMAS M. HOPKINS
Special Agent
Office of the Inspector General
U.S. Department of Justice

Subscribed and sworn to before me this 20th day of July, 2004.

MARIANNE B. BOWLER
Chief U.S. Magistrate Judge

10

JS 45 (5/97) - (Revised USAO MA 1/15/04)

<u>**Criminal Case Cover Sheet**</u>                                    <u>**U.S. District Court - District of Massachusetts**</u>

**Place of Offense:** _____    **Category No.** II _____    **Investigating Agency** DOJ/OIG _____

**City** Ayer _____    **Related Case Information:**

**County** Middlesex _____    Superseding Ind./ Inf. _____ Case No. _____
Same Defendant _____ New Defendant X _____
Magistrate Judge Case Number 04-867-JX98
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name Jeffrey Holliday _____    Juvenile ☐ Yes ☒ No

Alias Name _____

Address 45 Saint Martin Street, Fitchburg, Massachusetts 01420

Birth date (Year only): 1963 SSN (last 4 #): 2489 Sex M Race: White Nationality: USA

**Defense Counsel if known:** _____    Address: _____

**Bar Number:** _____

**U.S. Attorney Information:**

AUSA John J. Farley _____    Bar Number if applicable _____

Interpreter: ☐ Yes ☒ No    List language and/or dialect: _____

Matter to be SEALED: ☐ Yes ☒ No

☐ Warrant Requested    ☒ Regular Process    ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____ in _____
☐ Already in State Custody _____ ☐ Serving Sentence ☐ Awaiting Trial
☐ On Pretrial Release: Ordered by _____ on _____

**Charging Document:** ☐ Complaint    ☐ Information    ☐ Indictment

**Total # of Counts:** ☐ Petty ____ ☐ Misdemeanor ____ ☒ Felony 1

**Continue on Page 2 for Entry of U.S.C. Citations**

☒ I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: _____    Signature of AUSA: _____

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant** _____

| | Index Key/Code | U.S.C. Citations<br>Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 18 U.S.C. § 641 | Theft of Government Property | 1 |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

HOLLIDAYJS45.wpd - 1/15/04 (USAO-MA)